IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER R. HESS, | : | CIVIL ACTION NO. **1:CV-03-1668** |
| Petitioner | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| SUPERINTENDENT of SCI-ROCKVIEW and ATTORNEY GENERAL of PENNSYLVANIA, | : | |
| Respondents | : | |

**SUPPLEMENTAL REPORT AND RECOMMENDATION**

**I. BACKGROUND**.

By Order of the Court dated November 21, 2006, Petitioner's Motion for leave to file a second amendment to his amended habeas petition was granted. (Docs. 92 & 96). The Court incorporated the Petitioner's proposed second amendment (Doc. 92-2) into his Amended Petition. The Court also rejected our August 2, 2006 Report and Recommendation (Doc. 87) and remanded this case to us in light of the second amendment to the Amended Petition for Writ of Habeas Corpus of Christopher Hess, which was filed pursuant to 28 U.S.C. § 2254.

Upon remand, we ordered Petitioner and Respondents to file briefs regarding only the second amendment to the Amended Habeas Petition. (Doc. 97). Petitioner field his Brief on December 12, 2006, and Respondents, after we granted them an extension of time, filed their Brief on January 23, 2007. (Docs. 98 & 102). We now consider only Petitioner's single new claim contained in his second amendment to the Amended Habeas Petition. We incorporate by reference our August 2, 2006 Report and Recommendation as if fully set forth herein (Doc. 87), and

find that Petitioner's one new claim does not effect our prior Report and Recommendation with respect to Petitioner's claims contained in his Amended Habeas Petition. Thus, we issue this Report and Recommendation as a Supplement to our August 2006 Report and Recommendation.

**II. Second Amendment to Amended Habeas Petition.**

Petitioner's new claim is that an unredacted transcript of a conversation between himself and Chief Duane Lebo that discussed his prior criminal record was ostensibly placed in the jury envelope, and "therefore, it is likely that one or more of the jurors read about the Petitioner's criminal record in the unredacted transcript." (Doc. 92-2, p. 1, ¶ 99.1). In his Motion for Leave to file his second amendment, Petitioner states that it is believed that the jury "may have read about Petitioner's prior record in reviewing the transcript in Exhibit # 22." (Doc. 92-1, p. 3, ¶ 13.). Petitioner states that if the unredacted transcript which included the stated conversation about his prior criminal record was seen by the jury, it would have prejudiced his right to a fair trial. (*Id.*, ¶ 15.). Petitioner also states in his new claim that his trial counsel did not object to the placement of the unredacted transcript in the jury envelope. (Doc. 92-2, p. 1, ¶ 99.2). As a result, Petitioner claims that he was denied his Sixth Amendment rights to an impartial jury and effective assistance of counsel.

**III. Discussion.**

In his Brief, Petitioner states that there is no evidence that he was ever previously aware of his new claim that the unredacted transcript, which included the stated conversation about his prior criminal record, may have been seen by the jury. Petitioner indicates that if Respondents do not contest that this transcript was released to the jury, then habeas relief may be available. (Doc. 98,

p. 3). However, Respondents emphatically state in their Brief that they "have always disputed that improper material went out with the jury for deliberation." (Doc. 102, p. 2). Respondents state that "[t]he record is clear that when the case was appealed to the Superior Court of Pennsylvania the trial exhibits were sealed in an envelope... ." Respondents also correctly point out that "[t]he record contains no evidence that a transcript of the Defendant's statement went back with the jury." (*Id.*, pp. 2-3)(emphasis original). As discussed below, we find that there is no evidence that the unredacted transcript, which included a discussion about Petitioner's prior criminal record, did, in fact, go to the jury during deliberation.

We agree with Respondents that Petitioner's new claim is based entirely upon speculation and conjecture, and that it lacks any proof supported by the record. While Petitioner frames the instant question as whether the jury actually read the stated unredacted transcript containing a statement detailing his prior criminal record (Doc. 98, p. 3), we find that the proper issue is whether there is any evidence in the record to show that the jury actually received the transcript in question during its deliberation. We also find the answer to the correct question to be a resounding no. As stated, Petitioner merely relies upon the "possibility" that the stated transcript "may have made its way back to the jury room." (*Id.*, p. 4).[1] Respondents also argue that this new claim of Petitioner was not exhausted. (Doc. 102, p. 2). Petitioner does not dispute that this claim was not exhausted, as he states that "none of the previous attorneys, nor the Petitioner, has ever raised the issue of

[1]Petitioner states that, if the Court deems it necessary to clear up the above stated new issue, he requests an evidentiary hearing. (Doc. 98, p. 4). We do not find it necessary to conduct a hearing regarding Petitioner's new claim, since we do not find it to be supported by the record before us.

whether a prejudicial transcript was sent out to the jury who tried the Petitioner's case." (Doc. 98, p. 2). Petitioner states that there is no evidence that he was ever aware of his new claim. (*Id*.). Rather, Petitioner's counsel indicates that this was a new claim he accidentally discovered, while preparing objections to our August 2006 Report and Recommendation, after comparing the transcripts with the evidence vault documents (*i.e.*, trial evidence maintained in the Courthouse basement vault) and the jury envelope. (*Id*., p. 4). Petitioner states that #22 was written on the envelope that contained the exhibits that were provided to the jury, and that, after reviewing trial testimony, exhibit #22 was an unredacted transcript that contained information about his prior criminal record. (Doc. 92-1, p. 2, ¶'s 10.-11.).

Exhaustion of state remedies is not required if: 1) the state corrective process is "so deficient" that any effort to obtain relief via state proceedings would be futile, *Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir. 1986); 2) the acts of the state authorities have, in effect, made state remedies unavailable to the petitioner, *Mayberry v. Petsock*, 821 F.2d 179, 184 (3d Cir.), *cert. denied*, 484 U.S. 946 (1987); and 3) there has been such an "inordinate delay" in state procedures that the state process has been rendered ineffective. *Hankins v. Fulcomer*, 941 F.2d 246, 251 (3d Cir. 1991); *Schandelmeier v. Cunningham*, 819 F.2d 52, 54-55 (3d Cir. 1986), *cert. denied*, 480 U.S. 938 (1987).

The Petitioner is time-barred from appealing his conviction based on his new claim. *See* Pa.R.A.P. 903(a); *Doctor v. Walters,* 96 F.3d 675, 681 (3d Cir. 1996). Thus, exhaustion of this new claim would be excused, as state law forecloses review of any decision entered regarding the Petitioner's judgment of sentence. (*Id*.). Therefore, the Petitioner's new claim is procedurally

defaulted, since state remedies are clearly foreclosed. *English v. Vaugh*, 2005 WL 1677967, at *3 (E.D. Pa. July 15, 2005).

The Petitioner could not file another PCRA Petition since it would clearly be untimely under Pennsylvania Law. *See* 42 Pa. C.S.A. §9545(b) (PCRA petition must be filed within one year of the date on which the judgment becomes final). The Pennsylvania appellate courts cannot enlarge the time for filing a notice of appeal, a petition for allowance of appeal, a petition for permission to appeal, or a petition for review, except in the case of fraud or breakdown in the processes of a court. *See* Pa. R.A.P. 105(b) and note that follows. The Petitioner has not alleged fraud or a breakdown in the Pennsylvania appellate court processes. The Petitioner does not claim that the trial court failed to advise him of his appeal rights. Nor does he claim that there was fraud or a breakdown in the State Court process. We find that the allegation raised by the Petitioner with respect to his new claim would not permit the Pennsylvania appellate courts to extend the time period in which he could appeal his judgment of sentence to the Pennsylvania Superior Court or in which he could file a PCRA petition. *See Commonwealth v. Braykovich*, 444 Pa. Super. 397, 664 A.2d 133, *appeal denied*, 544 Pa. 622, 675 A.2d 1242 (1995). We also agree with Respondents that after all the time that has now elapsed and after Petitioner's numerous PCRA petitions "there would be no point in [Petitioner] filing another P.C.R.A. petition." (Doc. 102, p. 2).

While exhaustion of Petitioner's new claim may be excused, we do not find that Petitioner's new claim is based on newly discovered evidence. Rather, we agree with Respondents that the record is devoid of any evidence that the stated transcript was sent to the jury during its deliberation. We find that Petitioner's new claim is based entirely on speculation and not on newly

discovered evidence. Further, there is no claim that Petitioner's newly discovered basis for his second amendment to his Amended Habeas Petition, which was accidentally discovered by his current habeas counsel, was unavailable to him or his prior attorneys in his direct and collateral appeals. Even if the trial transcripts alone were not sufficient to discover Petitioner's new claim as he states (Doc. 98, p. 4), the evidence vault documents and the jury envelope were all available at the time of Petitioner's appeals. Thus, the information which forms the basis for Petitioner's new claim was available at the time of Petitioner's first direct appeal, *i.e.* the envelope containing the exhibits for the jury and the transcript containing the statement with Petitioner's prior record.

Moreover, we do not find any merit to Petitioner's contention that he was denied effective assistance of trial counsel for failing to object to allowing the transcript containing the statement with his prior criminal record to go to the jury and of appellate counsel for failing to raise this new claim on appeal (Doc. 92-2, p. 3, ¶ 130.1), since we agree with Respondents (Doc. 102, p. 3) that there is no evidence to show that the transcript did go to the jury during its deliberation. It cannot be found that the performance of Petitioner's attorneys was objectively unreasonable if there was no evidence to show that the transcript in question actually went to the jury during its deliberation.

Respondents also argue that Petitioner's new issue is waived since he could have raised it on direct appeal or in one of his numerous PCRA petitions he filed through counsel. (Doc. 102, p. 2). However, as discussed, Petitioner indicates that his present counsel just discovered this new issue. In any event, as discussed, we simply do not find that there is any evidence that during its deliberation, the jury was actually given the stated transcript containing discussion of Petitioner's prior criminal record.

We have reviewed the Exhibits which Petitioner relies upon with respect to his new claim, in particular Exhibits 30, 31 & 32, Doc. 65, as well as the relevant Notes of Testimony ("NT") from Petitioner's trial, NT 144-147, Doc. 65. We do not find that these exhibits and these NT pages demonstrate that the unredacted statement of Petitioner, in which he discussed his prior criminal record went out with the jury during its deliberation. In fact, the NT provide, in pertinent part, as follows:

> MR. GERY: I would like to have marked as Exhibit 22 the unredacted transcript of the tape recording, and that is essentially for the record only. There's no intention that the jury see the unredacted transcript.

(Doc. 65, NT 144).

It further provides:

> MR. GERY: In fact, Your Honor, I propose to send no copy of the Defendant's statement out with the jury during their deliberations; however, what I would like to do, and I believe Mr. Andrews is in agreement, is I have made a redacted copy of Exhibit 22 that I would like to have marked as Exhibit 23.
>
> Basically what happened is in the taped statement Chief Lebo and the Defendant discuss his prior record, and we both agree that that was inappropriate for consideration, so I've gone through and blacked out all and any references made to that.
>
> What I propose is to have this redacted copy marked as Exhibit 23, and I made several copies, and I intend to distribute one to the Court – I'll do that now – and then one to each juror for them to follow along as they listen to the tape recording.
>
> ****
>
> THE COURT: Do the rules prohibit sending out a statement?

MR. ANDREWS: Yes.

****

I think it's appropriate that the jury hear the statement and understand it, and I do not object to their use of the redacted transcript as an aid in hearing.

THE COURT: So we won't send any of these out with the jury. Okay.

****

THE COURT: [Exhibits] Twenty-one, twenty-two, and twenty-three are admitted with the understanding that nothing will go out to the jury.

(Whereupon, Commonwealth's Exhibit Nos. 21, 22, and 23 were admitted into evidence.

(Doc. 65, NT 145-147).

Petitioner argues that since the jury may have received the hospital record[2] containing evidence of his prior crimes and may have read the transcript with the statement containing his prior crimes that may have been mistakenly sent with the jury during its deliberation, then this prejudicial information which "may have been placed before the jury's eyes" would have made it impossible for the jury to render a fair verdict in his case. (Doc. 98, pp. 2-3). However, we have not found the record to support Petitioner's claims that either the hospital record or the transcript, at issue herein, went out with the jury for deliberation. As we stated in our August 2006 Report and Recommendation:

---

[2]Petitioner's claim regarding the hospital record was contained in his Amended Habeas Petition and was addressed in our August 2006 Report and Recommendation.

The Petitioner contends that none of his previous counsel effectively argued for a new trial based on prejudicial information contained in the hospital record that allegedly went out with the jury during deliberation. (Doc. 65, p. 27). We find that the actions of trial counsel and PCRA counsel did not amount to ineffectiveness. The CCP, sitting as the PCRA Court, found that the Petitioner did not provide any evidence that the medical report actually went out with the jury. (Doc. 21, Exhibits by the Respondents, May 23, 2002, Court of Common Pleas of Cumberland County Opinion, p. 2). The Court stated:

> The defendant did not present any testimony to support his claim. He merely offered into evidence portions of the trial record. These included 1) the objectionable page of the medical records, 2) a statement which petitioner contends was made by the prosecutor in his closing argument and 3) a statement by the trial judge to counsel at the conclusion of his jury instructions.
>
> While neither counsel made reference to the objectionable material in their closing argument, one attorney made the following promise to the jury:
>
>> And one of the exhibits that you will receive, the hospital record, you will see where (the victim) was interviewed by the nurses at the hospital, and on the one page of that report - - you'll have a chance to look at it.
>
> At the conclusion of his instructions, the trial judge directed counsel to "try and work out an agreement which exhibits should go out." Petitioner contended that those excerpts from the trial record were sufficient to establish that the objectionable page of the medical records was given to the jury. We disagreed.
>
> We were not persuaded that the jury ever saw the objectionable portion of the victim's records. To the contrary, we were persuaded that it did not. While the record is silent as to which exhibits went to the jury during its deliberations, there was ample evidence to support our conclusion. In the first instance, it is clear form the record that the statement referenced in the closing argument was not referring to the objectionable portion of the nurse's notes. Furthermore, we cannot conclude that the jury saw any portion of that record simply because it was promised in closing argument. However, the most convincing evidence came from petitioner's trial counsel, who testified as follows:

Q. Mr. Andrews, you've been the Chief Public Defender here in Cumberland County since sometime in the 1970's is that correct?
A. Since October of 1976.
Q. When you would have tried this case on behalf of Mr. Hess, you had over 20 years of experience as a trial lawyer?
A. As a trial lawyer, yes, more than 20 years.
Q. **Can you recall any cases in which you would have allowed exhibits to be admitted without first reviewing them?**
**A. No.**
**Q. Okay. Can you recall any cases in which you would have allowed exhibits to go to the jury without first reviewing them?**
**A. No.**
Q. So would it be a fair statement that in this case, although you have no specific recollection, that you would have reviewed all the hospital records?
A. That's my conclusion.
Q. And if you would have reviewed the hospital records, you would have found the particular page to be objectionable?
A. Absolutely.
Q. And would not have agreed with Mr. Gery that it go out to the jury?
A. Absolutely.
Q. So if it would have gone out to the jury, it would appear on the record that Judge Sheely would have decided that dispute between counsel?
A. That's correct.

Transcript of Proceedings, February 27, 2002, at 11 - 12.

Counsel is presumed to be effective and "the unshifting burden to prove ineffectiveness always rests upon the defendant." *Commonwealth v. Rivers*, 567 Pa. 239, 786 A.2d 923, 937 (2001). Since petitioner was unable to establish that the jury ever saw the objectionable material, he did not meet that burden. Therefore, his request for relief was denied. (Emphasis added).[3]

---

[3]We have added the above emphasis for present purposes. The emphasized response of Petitioner's trial counsel is clearly applicable to both Petitioner's claim in his Amended Habeas Petition regarding the hospital record, as well as to his Second Amendment to his Amended

> Once again, the Petitioner has not presented evidence to support his contention that the hospital record went out with the jury for deliberation. Also, the Petitioner's trial counsel testified that he would not have let a document containing prejudicial information go out with the jury for deliberation. As the Respondents note, "[t]he sum total of [the Petitioner's] factual support for the proposition that the report actually went into the hands of the jury is a list of exhibits and an isolated statement by the attorney for the Commonwealth in closing argument." (Doc. 72, p. 12, ¶ 2).

(Doc. 87, pp. 28-30).

Accordingly, we find that Petitioner is not entitled to relief on his new claim made in his Second Amendment to his Amended Habeas Petition.

**IV. SUPPLEMENTAL RECOMMENDATION.**

Based on the foregoing, we recommend that the Petitioner's request for habeas relief based on his claim in his Second Amendment to his Amended Habeas Corpus Petition (Doc. 92-2) be **DENIED**.[4]

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 20, 2007**

---

Habeas Petition regarding the transcript of his statement to Chief Lebo.

[4]As indicated above, we incorporate by reference our August 2006 Recommendation (Doc. 87) with respect to all of Petitioner's claims raised in his Amended Habeas Petition.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER R. HESS, | : | CIVIL ACTION NO. **1:CV-03-1668** |
| | : | |
| Petitioner | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| SUPERINTENDENT of SCI-ROCKVIEW and ATTORNEY GENERAL of PENNSYLVANIA, | : | |
| | : | |
| Respondents | : | |

**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing Report and Recommendation dated **February 20, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis

of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 20, 2007**